## THE HICKI HOY.

(Circuit Court of Appeals, Second Circuit. February 18, 1920.)

No. 134.

Collision ⬦⇒74—Evidence held not to show that cause was mooring one launch
too close to another.

Evidence *held* not to sustain the claim of libelant that a collision be-
tween two launches, moored 12 feet apart, during a gale in which libel-
ant's launch broke one of her lines and was found in part under the other,
whose lines held, was due to the fault of the latter in being moored too
close.

Appeal from the District Court of the United States for the East-
ern District of New York.

Suit for collision by Robert Bauer, owner of the launch Esther,
against the gasoline launch Hicki Hoy; Peter J. Eiseman, claimant.
Decree for libelant, and claimant appeals. Reversed.

Leo J. Curren, of New York City, for appellant.
Richards Mott Cahoone, of Brooklyn, N. Y., for appellee.

Before WARD, ROGERS, and MANTON, Circuit Judges.

MANTON, Circuit Judge. For two weeks previous to Friday,
June 7, 1918, the launch Esther and the launch Hicki Hoy were moor-
ed on the westerly side of Friberg's dock at Rockaway Point. The
Hicki Hoy was about 32 feet long and the Esther about 20 feet long.
This dock projects into Jamaica Bay in a north-northeast direction.
As moored, the boats were abreast. Each had a stern line attached to
the same spile about 60 feet from the dock. Each had a bow line to
a rail running on the dock. Both were lying about northwest and
southeast. The Esther was to the starboard of the Hicki Hoy, and
they were about 12 or 15 feet apart. The Esther was berthed on May
24, 1919, and the Hicki Hoy was berthed shortly afterwards. Both
remained there safely for a period of two weeks.

On the morning of June 8th there was a heavy gale. The Esther
was sunk, but was not resting wholly on the bottom, being suspended

⬦⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

on her lines. She was lying under the Hicki Hoy, and her position is described as her stern out on the port side of the Hicki Hoy, opposite to the side on which the Esther was when afloat. It is described by witnesses as an "angle like a scissors." The Hicki Hoy did not shift her position or her lines. There is no evidence indicating that any one saw the Esther during the gale, or severe wind, until after she sank. A caretaker observed both vessels to be lying "all right" at about 8:30 on the evening of the 7th, and it is thought that the Esther sank between 1 a. m. and 7 a. m. on June 8th. The stern line of the Esther parted. The weather records show that there was a strong northwest wind on the morning of June 8th, reaching a velocity of 40 miles an hour, and at some shorter periods even as high as 44 miles. The witnesses described the wind as a "gale" and as "quite a storm." The tide sets in, when rising, along the dock from west to east, and on the morning of the mishap the tide was low at about 2 o'clock and high at about 8 o'clock. The Esther showed that the shear plank and part of the decking and combing on the port side were broken and the moorings of the engine loosened. This damage was caused by the pounding of the Hicki Hoy upon the Esther while lying in the position described. Liability was fixed against the Hicki Hoy, in the court below, because she was so moored that her mooring lines permitted her to ride upon the Esther and collide with her. It is argued here that this continued colliding and pounding of the Esther resulted in her sinking and consequential damage. The court below said that the appellant fastened the Hicki Hoy too close to the Esther.

The appellee's witness Schaffner was employed to watch the boats. He says that, during the daylight on the 7th, the Esther was apparently dry and sound and all right, and that he last saw the boat about half past 8 in the evening. The next morning, about half past 6, he saw her substantially in the position above described. He says "it was blowing pretty stiff." This watchman, when he last saw the launches on the evening preceding, did not anticipate any danger threatening the Esther. The fair inference is that the velocity of the wind caused the Esther to fill and sink, changing her position during the blow. The rising tide from west to east permitted her to drag directly toward the Hicki Hoy, and the force of the tide, aided by the wind, strained the Esther's lines and permitted her to take such a position, in such close proximity to the Hicki Hoy, as to produce such a collision and pounding. The Esther was thus able to pass under the Hicki Hoy to the position she was found in. This is the only reasonable explanation of the cause of the collision. A recital of it indicates no fault on the part of the Hicki Hoy. The burden of establishing fault was upon the appellee. We find nothing in the position of the boats, which apparently were safe for a period of two weeks, which warrants the claim that the Hicki Hoy was tied too close to the Esther. The probability, which is always a helpful guide, particularly where there is no eyewitness to the occurrence, is strong in this case in favor of the claim of the appellant, and seems to us to be the correct one.

Because the appellee failed to support his claim by evidence showing fault on the part of the Hicki Hoy, we are of the opinion that the decree below was improvidently granted, and it is therefore reversed.